IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JADA B., by and through her
Parent, SHANNON P.-R., and SHANNON P.-R.,
individually, of Linwood, Pa. 19061

     Plaintiffs

v.

DEVEREUX ADVANCED BEHAVIORAL
HEALTH, 444 Devereux Drive
Villanova, Pa. 19085;

    And

CHILDREN'S INTELLECTUAL
AND DEVELOPMENTAL DISABILITIES
SERVICES CENTER, 390 East Boot Road
West Chester, Pa. 19380

    Defendants

 

Civil Action

No.

 

 

 

JURY TRIAL DEMANDED

## COMPLAINT

## I.  Introduction

1.  Jada B., a young woman with disabilities, by and through her parent, Shannon P.-R., and Shannon P.-R. individually and on her own behalf (collectively referred to as "Plaintiffs"), bring this action against the above-named defendants under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. § 12101 ("ADA"), their federal and state implementing regulations, and Pennsylvania tort law.

2.  Plaintiffs seek an award of appropriate relief to the Family for the Defendants' violations of the foregoing statutes, specifically compensatory damages, punitive damages, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an

amount in excess of one hundred fifty thousand dollars.

3.     On information and belief, Defendants' employees, who were Jada's caretakers while not at school, injured Jada through physical and verbal abuse and through an extreme and reckless lack of care. On information and belief, Defendants' actions were negligent, reckless, intentional, or deliberately indifferent.

## II.   Parties

4.     Jada is a young woman with disabilities including Autism Spectrum Disorder, Intellectual Disability (a condition formerly known as "mental retardation" consisting of significant limitations in intellectual functioning and adaptive functioning (practical, everyday skills needed in school, home and the community)), and Bipolar Disorder, who, on information and belief, was abused and neglected while entrusted to the full-time care and supervision of a Pennsylvania residential facility run by Defendants Devereux Advanced Behavioral Health ("Devereux") and Devereux Pennsylvania Children's Intellectual and Developmental Disabilities Services ("Devereux CIDDS") (together "Defendants")  in West Chester, Pennsylvania.

5.     Plaintiff Jada B. was born in 2006 and is currently 15 years of age. At all relevant times, Jada resided within Chester County, Pennsylvania.

6.     Plaintiff Shannon P.-R. is Jada's parent, and at all relevant times resided in Linwood, Pennsylvania.

7.     Defendant Devereux Advanced Behavioral Health is located at 444 Devereux Drive, Villanova, Pennsylvania 19085.

8.     Defendant Children's Intellectual and Developmental Disabilities Services Center is located at 390 East Boot Road, West Chester, Pennsylvania 19380.

9.     This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331

because this case raises federal questions under federal law. The Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claims over which the Court has original jurisdiction that the federal and state claims form part of same case or controversy under Article III of the United States Constitution.

## III.   Jurisdiction and Venue

10.   Plaintiffs' claims and remedies are authorized by 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

11.   All of the Defendants' actions complained of herein took place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

## IV.   Applicable Law

### A.   Discrimination under Section 504 of the Rehabilitation Act.

12.   Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, "handicapped persons" in federally funded programs.

13.   The statute provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

14.   To state a claim under Section 504, a plaintiff must allege facts showing that: (1) she is an "individual with a disability" as defined under the statute; (2) she is "otherwise qualified" for participation in the program or the benefit denied; (3) the program receives "federal financial assistance"; and (4) she was "excluded from the participation in," "denied the benefits of," or "subjected to discrimination" in the program "solely by reason of her or his disability."

*Id.*; *see also Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991).

15.     A "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. § 104.3.

16.     If a plaintiff seeks compensatory damages for a Section 504 or ADA violation, the plaintiff must also show that the discriminatory conduct was intentional. *S.H. v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013).

17.     To establish intentional discrimination, the plaintiff must plead facts showing "at least deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018).

18.     To plead deliberate indifference, the plaintiff must allege, first, that the defendant had "knowledge that a federally protected right is substantially likely to be violated." *S.H.*, 729 F.3d at 265. Such knowledge must be actual, as "allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." *Id.* at 266 n.26. Second, the plaintiff must allege that the defendant "fail[ed] to act despite that knowledge." *Id.* at 265. The failure to act in the face of the requisite knowledge must be "a deliberate choice, rather than negligence or bureaucratic inaction," but it "does not require a showing of personal ill will or animosity toward the disabled person." *S.H.*, 729 F.3d at 263 (internal quotations omitted).

19.     "Notably, plaintiffs 'need not establish that there has been an intent to discriminate in order to prevail under Section 504.'" *Beam v. Western Wayne School District*, 165 F.Supp.3d 200, 211 (M.D. Pa. 2016) (*quoting Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991)). Rather, "[t]hey 'may circumstantially allege that [the student] was discriminated against . . . by alleging facts that could be interpreted to show bad faith or gross misjudgment.'" *Id.* (*quoting McKellar v. Commonwealth Dep't of Educ.*, 1999 WL 124381 at *5 (E.D. Pa. Feb 23, 1999)).

**B.**     **Discrimination under the ADA**

20.     Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

21.     Thus, "[t]o state a claim of disability discrimination under Title III of the ADA, a plaintiff must show (1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Anderson v. Franklin Inst.*, 185 F.Supp.3d 628, 642 (E.D. Pa. 2016) (quotation marks and citations omitted).

22.     "The term 'discrimination' is not directly and uniformly defined in Title III. Instead, the statute provides several general prohibitions that constitute discrimination for purposes of the general rule found in 42 U.S.C. § 12182(a)." *Menkowitz*, 154 F.3d at 116 (quotation marks and citation omitted). Among these prohibitions are "subject[ing] an individual . . . on the basis of a disability or disabilities of such individual[,] . . . directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of a public accommodation. 42 U.S.C. § 12182(b)(1)(A)(i).

23.     The ADA applies to private entities if the operations of such entities affect commerce including but not limited to those public accommodations listed in 42 U.S.C. U.S. Code § 12181(7).

24.     The Third Circuit has held that the ADA "extends the nondiscrimination rule of

[Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." *Jeremy H. v. Mount Lebanon School Dist.*, 95 F.3d 272, 279 (3d Cir. 1996).

25.     The ADA's causation standard is lower than Section 504, and does not require the disability to be the "sole cause" of the discrimination or denial of benefits, rather "the ADA only requires 'but-for' causation," i.e. but for the disability, there would be no discrimination or denial of benefits. *Furgess v. Pa. Dep't. Of Corr.*, 933 F.3d 285 (3d Cir. 2019).

**C.     Plaintiffs need not exhaust administrative remedies before filing suit in this Court.**

26.     A plaintiff raising educational claims pursuant to the Individuals with Disabilities Education Act ("IDEA") or Section 504's Free Appropriate Public Education ("FAPE") mandate must utilize IDEA's administrative process before filing suit in federal district court; otherwise, the district court must dismiss the case for lack of subject matter jurisdiction. *M.C. v. Perkiomen Valley School Dist.*, 2015 WL 2231915 at *4 (E.D.Pa. Sept. 29, 2016) *(citing Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 269, 281 (3d Cir. 2014)).

27.     Here, Plaintiffs are not bringing suit under IDEA, Defendants were not the Local Education Agency responsible for providing FAPE to Jada, and Defendants did not provide Jada's educational program. Plaintiffs are not alleging a denial of a FAPE under Section 504 or any other law, are not requesting compensatory educational services or a change in the student's educational placement, and, thus, are not required to exhaust administrative remedies under IDEA or Section 504.

**D.     Negligence in the training, supervision, and hiring of staff.**

28.     "There are four elements to a cause of action for negligence: a duty of care, a breach of that duty, a causal connection between the defendant's conduct and the resulting injury,

and damages." *Zeidman v. Fisher*, 980 A.2d 637, 639 (Pa. Super. 2009) (citation omitted).

29.    A breach of duty occurs where "the defendant's act or omission fell below the standard of care, and, therefore, increased the risk of harm to the plaintiff." *Green v. Pa. Hosp.*, 123 A.3d 310, 316 (Pa. 2015) (citation omitted).

30.    "To recover for negligent supervision under Pennsylvania law, a plaintiff must prove that his loss resulted from (1) a failure to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of his employment, (2) that is committed on the employer's premises, (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487–88 (3d Cir. 2013) (*citing Dempsey v. Walso Bureau, Inc.*, 431 Pa. 562, 246 A.2d 418, 420 (1968); *Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107–08 (Pa.Super.Ct.1998)).

31.    A plaintiff seeking to recover on a negligent hiring theory must show that: (1) employer defendant knew or should have known of the propensity of the employee and (2) such employment creates a situation in which a third party may be harmed. *Coath v. Jones*, 419 A.2d 1249, 1250 (Pa Super. Ct. 1980) (*citing Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 431 Pa. 562 (1968)).

**E.    Attorney's fees and costs.**

32.    Both Section 504 and the ADA permit recovery of reasonable attorney's fees by plaintiffs who are "prevailing parties" in an action or proceeding under those statutes. 42 U.S.C. § 12205; *see also* 29 U.S.C. § 794(b); *Andrew M. v. Delaware County Office of Mental Health/Mental Retardation*, 2005 WL 783070 at *15 (E.D. Pa. 2005) (attorneys' fees are recoverable under Section 504); *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311 (3d Cir. 2006) (attorneys' fees are recoverable under the ADA).

33.    The recovery of costs under Section 504 and the ADA includes expert witness costs and related expenses. *I.H. v. Cumberland Valley Sch. Dist.*, 842 F.Supp.2d 762, 777 (M.D. Pa. 2012); *M.M. v. Sch. Dist. of Philadelphia*, 142 F.Supp.3d 396, 413 (E.D. Pa. 2015).

## V.    **Factual History**

34.    Jada is a young woman with disabilities including Autism Spectrum Disorder, Intellectual Disability, and Bipolar Disorder who, upon information and belief, was abused and neglected while entrusted to the full-time care and supervision of a Pennsylvania residential facility run by Defendants, Devereux and Devereux CIDDS, in West Chester, Pennsylvania.

35.    Due to Jada's disabilities, she has a history of physical aggression, non-compliance, elopement, and self-injurious behavior, which occurred across all settings, in the home, in school, and in the community, for which she required residential treatment.

36.    On May 6, 2020, Defendants admitted Jada for residential treatment at Devereux CIDDS.

37.    While Jada attended Defendants' residential facility, Defendants were responsible for her safety and care.

38.    Jada received "Level 3" supervision, with an interval of alone time not exceeding 10 minutes.

39.    The Treatment Plan Defendants developed for Jada included psychiatric medications, individual therapy/behavioral consultation, practicing coping skills in therapy sessions, praise and corrective feedback, a break card protocol, and visual picture schedule.

40.    Jada had infrequent contact with her family while at Devereux CIDDS.

41.    The Treatment Plan also included a goal for Jada to have phone contact with her family only three out of four weeks per month and have visits with her family two times per

month.

42.     Jada's family further had limited contact with Jada due to her mother's lack of transportation.

43.     Jada has severe speech and language deficits. Jada uses a combination of some verbal communication, gestures, facial expressions, and a picture communication system to express her wants and needs.

44.     Jada is working on using multi-word utterances in social exchanges; she received visual supports and verbal prompts from school staff to be able to use these utterances with a communication partner.

45.     At all times, Defendants were aware of Jada's communication needs and deficits.

46.     Defendants were aware and documented that Jada's deficits in cognitive and verbal skills prohibit her from expressing basic sentiments like whether she would prefer to live at home.

47.     Upon information and belief, Jada's disabilities prevented her from reporting the abuse, neglect, and other failures of Defendants' staff while she was in their care.

48.     Jada requires physical support to complete basic daily hygiene tasks, such as bathing.

49.     Defendants' Treatment Plan acknowledges that Jada is a vulnerable young woman with disabilities who is "heedless to dangers in the community."

50.     Jada's disabilities leave her unable to protect herself from abuse and neglect.

51.     Defendants' Treatment Plan acknowledges that Jada is afraid of having people touch her.

52.     On school days, Jada attended Marple Education Center, a full-time autistic

support classroom, where she also received speech/language therapy, occupational therapy, and the support of a Personal Care Assistant.

53.     The Local Education Agency responsible for Jada's educational program and placement is the Chichester School District, which funded Jada's placement at Marple Education Center.

54.     Defendants did not provide Jada's educational program or placement.

55.     During Jada's time at Defendants' residential program, Jada began to engage in unusual behaviors including aggressive behaviors and self-injurious behaviors when her bus would return her to Defendants' campus.

56.     On or around September 23, 2020, Jada had a significant behavioral episode when the bus arrived at the Devereux CIDDS campus.

57.     On September 23, 2020, Jada's Marple Education Center teacher documented her concerns that Devereux CIDDS staff refused to help deescalate the significant aggressive episode that occurred when the bus returned to Devereux CIDDS because they would not board the bus.

58.     Defendants' staff's refusal to help deescalate Jada on the bus left Jada unsafe without the appropriate support to safely transition back to her residence. Without support from Devereux CIDDS there were insufficient staff and resources to help Jada safely transition off of the bus.

59.     On September 24, 2020, Devereux CIDDS employee and residence supervisor, Danielle Bendas, confirmed to individuals from Marple Education Center and the transportation manager coordinating Jada's transport that Devereux CIDDS staff would not board the bus even to deescalate a dangerous situation.

60.     On or around September 25, 2020, representatives from Devereux CIDDS, the

Chester County Intermediate Unit, and Marple Education Center met to create a bus crisis plan and to address Defendants' refusal to board the bus to help transition Jada off of the bus.

61.     In the crisis plan, Devereux CIDDS staff finally agreed to board the bus, but only in the case of an emergency.

62.     Jada continued to have trouble during transportation, including attacking staff members because she did not want to get off of the bus when she returned to Devereux CIDDS.

63.     During routine body checks on September 25, 2020 and September 28, 2020, staff at Marple Education Center familiar with Jada noticed bruises and scratching on Jada's body.

64.     Jada was unable to communicate the source(s) of the bruises and scratching.

65.     On October 20, 2020, Jada's autistic support teacher at Marple Education Center raised concerns to Parent and Defendants via e-mail relating to new and unusual scripting (the repetition of words, phrases, or sounds) involving Jada repeating aggressive and abusive phrases such as, "shut the [expletive] up," "sit the [expletive] down," and "you are nasty."

66.     Jada was exposed to such inappropriate and abusive language at Devereux CIDDS.

67.     Her autistic support teacher also noted her concern that Jada began smacking herself on her buttocks frequently at this same time.

68.     Parent contacted Childline to report suspected child abuse to the county, but she was told that the county lacked the ability to investigate Defendants.

69.     On information and belief, Defendants caused injuries to Jada.

70.     On information and belief, Defendants failed to treat Jada's injuries.

71.     On information and belief, Defendants failed to document Jada's injuries.

72.     In addition, throughout Jada's time at Devereux CIDDS, there were frequent

problems involving Defendants' employees failing to provide the appropriate doses of several important medications to Jada leading to missed doses and compromising Jada's health and safety.

73.    Jada's Treatment Plan notes the use of the following medications, *inter alia*: Clonidine (for impulsivity), Depakote (for mood), Seroquel (for mood), Remeron (for sleep), and Vistaril (for anxiety) and medication for constipation.

74.    E-mail correspondence from Devereux CIDDS also notes that Jada was taking Quetiapine (antipsychotic), Divalproex (for Bipolar Disorder), Hydroxyzine Pamoate (antihistamine), Mirtazapine (antidepressant).

75.    Jada's medications are time-sensitive and can produce symptoms when doses are missed.

76.    On September 29, 2020, Devereux CIDDS nurse, Donna DelValle, RN, notified Jada's school program that Jada's afternoon medication was found in the banker's bag which was not delivered to school. It included missed doses intended for September 28 and earlier in the day on September 29.

77.    On October 21, 2020, Parent alerted Defendants that Jada's school again lacked all of medications, including Clonidine, a medication for Jada's impulsivity.

78.    On October 22, 2020, the school nurse at Marple Education Center had to reach out to Defendants because Jada lacked Clonidine for several days. She discovered the Defendants sent Jada's evening doses (during which time she only took Seroquel without the Clonidine) instead of her afternoon doses, leaving Jada without the correct doses.

79.    Later in the day on October 22, 2020, Kirsten Quinn, an evening nurse at Devereux CIDDS, noted that she also lacked the required medications for Jada's 8:00PM medication

administration. Not only were the medications unaccounted for, but the time stamp on the email (9:22 PM) shows that Jada's 8 PM medications were inappropriately delayed.

80.     On Monday, November 30, 2020, Marple Education Center's Supervisor of Low Incidence Programs contacted Defendants and Parent to state that, "The weekly medication was not picked up for this week and the substitute nurse [at Marple Education Center] did not feel comfortable giving Jada the medication which was in two prescription bottles in the nurse's office, which indicated the medication had expired." Defendants, she wrote, confirmed that Jada's medication was not picked up that morning. As a result, Jada missed her 1:00PM dosage of two medications. She wrote that Jada's bus driver had tried to reach out last Wednesday and over the weekend to pick up the medications but did not get a response back.

81.     Defendants' negligent treatment was also revealed by Jada coming to school in clothes that did not fit. On November 5, 2020, Jada's teacher at Marple Education Center reported that Jada's pants on a few days in the prior two weeks were "difficult/impossible to button/zip" and that Jada was coming in socks that "seem to be causing some discomfort."

82.     Defendants knew Jada's clothing would not button and did not fit and chose to humiliate her and cause her physical discomfort by sending her to school wearing the ill-fitting clothing.

83.     Earlier in the year, in September 2020, Parent had sent in appropriate clothes for Jada, which Defendants did not provide to Jada.

84.     Jada's Parent photographed Defendants' negligent treatment, revealing that Jada's hair was not kept clean, a task she cannot do without support and which was entrusted to Defendants.

85.     Jada's Parent also photographed bruises and scratches on Jada which, upon

information and belief, were inflicted by Defendants' staff and/or which were the result of gross negligence by Defendants' staff.

86.    Defendants' implemented a restrictive diet for Jada without Parent's information or permission.

87.    Jada is a picky eater who often misses nutritional intake due to refusing foods.

88.    Parent requested that Defendants provide a nutritional supplement if Jada misses food intake.

89.    Defendants would not allow the supplements due to Jada's Body Mass Index ("BMI").

90.    It is not clear whether Jada was regularly eating.

91.    Defendants did not offer to provide any nutritional supplement to ensure that Jada receives appropriate nutrition.

92.    In October 2020, Jada began having frequent, urgent, and uncomfortable bowel movements during the school day for two weeks while Defendants continued to provide Jada with Miralax (a laxative) at bedtime.

93.    On October 9, 2020, Jada's teacher raised her concerns via e-mail to Danielle Bendas about the bowel movements and Ms. Bendas responded that it may be a behavioral issue versus a medication issue.

94.    Jada's teacher further explained that they had ruled out all behavioral causes because Jada was missing preferred activities and actually having a bowel movement each time, as many as four in one school day, lasting for up to twenty to twenty-five minutes.

95.    Defendants did not provide any medical review or follow up until October 12, when they discontinued the use of Miralax.

96.    The Defendants' delay in care was humiliating and painful for Jada, compromised her health, and demonstrates a complete lack of concern for Jada's wellbeing.

97.    Parent reported her concerns about abuse and neglect to Defendants in writing on several occasions including on October 20, 2020 to individuals including Danielle Bendas (Residence Supervisor), Georgetta Chilton (Care Coordinator), Leana Thedford (Program Director).

98.    Due to Parent's concerns about suspected abuse and neglect by Defendants, Jada now attends a different residential program.

99.    Jada was discharged from Devereux CIDDS on December 8, 2020.

100.    Upon information and belief, Defendants' employees caused Jada's injuries through physical and verbal abuse, and/or through an extreme and reckless lack of care.

101.    Upon information and belief, Defendants' actions were negligent, reckless, intentional or deliberately indifferent.

102.    Upon information and belief, Jada experienced this abuse and neglect because of her disability as she required residential treatment due to her disability and was unable to defend herself, advocate for herself, or report the abuse and neglect due to her several and significant disabilities.

103.    Defendants failed to adequately hire, train, supervise, and staff employees to provide a safe and secure environment for Jada.

104.    Leana Thedford is or was the Program Director of the "Jackson B" residence at Devereux CIDDS in which Jada resided at all times relevant to this Complaint. On information and belief, the Program Director was responsible for the policy, practice, supervision, implementation, and the care, custody, and safety of all individuals residing in "Jackson B," including Jada, as well as for the hiring, training, supervision, discipline, retention, reporting, staffing, and

conduct of all personnel in this residence unit.

105.    Danielle Bendas is or was the Supervisor of the "Jackson B" residence at Deve-
reux CIDDS at all times relevant to this Complaint.  On information and belief, the Supervisor
was responsible for the practice, supervision, implementation, and the care, custody, and safety
of all individuals residing in "Jackson B," including Jada.

106.    Georgetta Chilton is or was a Care Coordinator at Devereux CIDDS at all times
relevant to this Complaint. On information and belief, the Care Coordinator was responsible for
the care, safety and supervision of children residing in the "Jackson B" residence, including Jada.

107.    Jeff Di Guiseppe is or was the Director of Nursing at Devereux CIDDS at all
times relevant to this Complaint. On information and belief, the Director of Nursing was respon-
sible for the policy, practice, supervision, implementation, and the medical administration, med-
ical care, and safety of all individuals residing in "Jackson B," including Jada, as well as for the
hiring, training, supervision, discipline, retention, reporting, staffing, and conduct of all nursing
personnel in this residence unit.

108.    Donna DelValle, RN is or was a registered nurse at Devereux CIDDS at all times
relevant to this Complaint. Upon information and belief, Ms. DelValle was responsible for the
safe delivery and administration of medication to Jada.

109.    Defendants have failed to comply with requests for records from Jada's repre-
sentatives, sent on November 17, 2020, December 15, 2020, January 22, 2021, February 16,
2021, February 22, 2021, March 3, 2021, and June 22, 2021.

## VI.    Claims

### Count I: Intentional Discrimination
### (against all Defendants)
### Section 504

110.    Plaintiffs incorporate by reference all preceding paragraphs.

111.    At all times relevant to this Complaint, Jada was a qualified individual with a disability for purposes of Section 504.

112.    At all times relevant to this Complaint, Defendants knew of Jada's disability.

113.    Defendants are the recipients of multiple sources of federal financial assistance and funds.

114.    Despite her disabilities, at all times relevant to this Complaint, Jada was otherwise qualified to participate in Defendants' residential program with appropriate accommodations and supplemental supports for purposes of Section 504.

115.    Jada's disability was the basis for, and cause of, the Defendants' discrimination against her, resulting in a denial of benefits of her program; physical, emotional, and psychological injuries; and humiliation.

116.    The Defendants intentionally, purposefully, with deliberate indifference, and/or gross misjudgment violated Jada's rights secured by Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and 34 C.F.R.§ 104.4 by:

        a.    Subjecting Jada to discrimination on the basis of the nature and severity of her disability, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(a); and

        b.    Discriminating against Jada and her Parent for the purpose of interfering with any right or privilege secured by Section 504, in violation of 34 C.F.R. § 100.7(e).

117.    As a direct and proximate result of Defendants' violations of Section 504 as set forth above, Jada was abused and injured, and has suffered physical and emotional trauma, pain and suffering, separation from family and other relationships, humiliation, and loss of life's most basic pleasures. She has incurred and will continue to incur significant physical, emotional, and

behavioral harm, humiliation, and monetary damages stemming from the injuries she has suffered due to Defendants' violations of Section 504.

118.    As a direct and proximate result of Defendants' violations of Section 504 as set forth above, Jada was abused and injured, causing Plaintiff Shannon P.-R. to suffer psychological and emotional trauma, separation from her daughter, loss of relationship with her daughter, and humiliation. She has incurred and will continue to incur significant psychological, emotional, and monetary damages stemming from the physical and emotional injuries she and Jada have suffered due to Defendants' violations of Section 504.

**WHEREFORE**, Plaintiffs demand judgment in their favor against all Defendants jointly, severally, individually, and/or jointly and severally for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

**Count II: Intentional Discrimination**
**(against all Defendants)**
**Americans with Disabilities Act**

119.    Plaintiffs incorporate by reference all preceding paragraphs.

120.    The requirements for a claim under the ADA are the same as Section 504, except that under the ADA, a plaintiff's disability need be only one factor in causing the denial of benefits or discrimination at issue. *See* 29 U.S.C. § 794(a); *see also* 42 U.S.C. § 12132; *Helen L. v. DiDario*, 46 F.3d 325, 330 n.7 (3d Cir. 1995).

121.    As set forth above, Defendants violated Section 504; thus, Defendants also violated the ADA.

122.    At all times relevant to this Complaint, Jada was a qualified individual with a disability for purposes of the ADA.

123.    Devereux and Devereux CIDDS are a "place of public accommodation." 42 U.S.C. § 12181(7).

124.    Defendants owed Jada a duty of care to provide Jada with an appropriate and properly supervised residential program free from physical and/or mental abuse in accordance with the ADA.

125.    Defendants breached their duty of care under the ADA by failing to provide Jada with a safe residential program and to be free from physical and mental abuse and bodily harm at the hands of her caregivers.

126.    Defendants' conduct in failing to provide Jada with a safe and appropriate residential program free from physical and/or mental abuse denied her the benefits of her program.

127.    Despite her disabilities, at all times relevant to this Complaint, Jada was otherwise qualified to participate in the Defendants' residential program with appropriate accommodations and supplemental supports for purposes of the ADA.

128.    Defendants discriminated against Jada by failing to provide Jada with a safe and properly supervised residential program, ultimately causing her injuries.

129.    Jada's disability was the basis for, and cause of, the discrimination against her, denial of benefits of her program, and her injuries.

130.    Defendants' conduct constituted a conscious disregard for, and deliberate indifference to, Jada's rights under the ADA to a safe, appropriate and properly supervised residential program, and to be free from abuse and bodily harm at the hands of her caregivers.

131.    As a direct and proximate result of Defendants' violations of the ADA as set forth above, Jada was abused and injured, and has suffered physical and emotional trauma, separation from family and other relationships, humiliation, and loss of life's most basic pleasures, and

without the declaratory and injunctive relief sought herein, Jada and others similarly situated may be subject to similar abuse and harm.

132.    Jada has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries she has suffered due to Defendants' violations of the ADA.

133.    Jada was deprived the benefits of residential program, and otherwise subjected to discrimination because of her disability.

134.    Defendants acted in bad faith, used gross misjudgment, and/or were deliberately indifferent to the neglect and abuse of Jada.

135.    The Defendants intentionally and purposefully violated Jada's rights secured by the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.* and 28 C.F.R. § 35.130, by:

        a.    Subjecting Jada to discrimination, in violation of 28 C.F.R. § 35.130(a);

        b.    Subjecting Jada and her parent to harassment in violation of 28 C.F.R. § 35.130(a) and 42 U.S.C. § 12203; and

        c.    Limiting Jada in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the aid, benefit, or service, in violation of 28 C.F.R. § 35.130(b)(1)(vii).

136.    As a direct and proximate result of Defendants' violations of the ADA as set forth above, Jada was abused and injured, causing Plaintiff Shannon P.-R. to suffer psychological and emotional trauma, separation from her daughter, loss of relationship with her daughter, and humiliation. She has incurred and will continue to incur significant psychological, emotional, and monetary damages stemming from the physical and emotional injuries she and Jada have

suffered due to Defendants' violations of the ADA.

**WHEREFORE**, Plaintiffs demand judgment in their favor against all Defendants jointly, severally, individually, and/or jointly and severally for compensatory damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

### Count III: Negligence
### (against all Defendants)

137.    Plaintiffs incorporate by reference all preceding paragraphs.

138.    Defendants breached their duty under Section 504, the ADA, and Pennsylvania law to ensure Jada's program was safe, appropriate, and free from unreasonable restraint, aversive interventions, verbal harassment by staff, physical assaults by staff, and other foreseeable risks of physical and psychological harm.

139.    At all times relevant to this Complaint, Defendants had a duty under Pennsylvania law and federal and state statutes and regulations to appropriately supervise, educate, habilitate, and treat Jada; to ensure that her program was safe, appropriate, properly staffed and supervised by appropriately trained individuals, and free from unreasonable and foreseeable risks of harm; to hire, train, supervise, discipline, staff, and retain employees that would provide safe, secure, and adequate supervision of Jada; and to refrain from taking unreasonable actions that would cause damages to Jada.

140.    The Defendants owed Jada a duty of care to prevent the conduct alleged, because, under the same or similar circumstances, a reasonable, prudent, and careful person should have anticipated that injury to Jada or to those in a like situation would likely result from the foregoing conduct.

141.    Defendants offered no explanation as to the cause of Jada's injuries.

21

142.    Defendants' acts and/or omissions described herein also violated their public duty as a matter of law to provide safe, appropriate, and properly supervised habilitation, care, and treatment for Jada in compliance with federal and state statutory and regulatory requirements to provide adequate and safe staffing and habilitative care consistent with the individual service plan for persons such as Jada.

143.    Defendants' abuse of Jada thus constituted negligence *per se*.

144.    As a direct and proximate result of Defendants' negligence and recklessness as set forth above, Jada was abused and injured, and has suffered physical and emotional trauma, escalating maladaptive and self-injurious behaviors, separation from family and other relation-ships, and loss of life's most basic pleasures.  She has incurred and will continue to incur signif-icant physical, emotional, behavioral harm and monetary damages stemming from the injuries she has suffered due to Defendants' negligence and recklessness.

145.    The aforesaid injuries and harm to Plaintiff Jada was caused by the negligence, gross negligence, carelessness, wanton and willful misconduct, and reckless conduct of Defend-ants, which consisted of one or more of the following:

    a.    failing to appropriately investigate reports of abuse or neglect;

    b.    failing to prevent the continued harassment, physical abuse, and verbal abuse of Jada;

    c.    failing to keep Jada safe;

    d.    failing to protect Jada from physical abuse, verbal abuse, and harassment by their employees;

    e.    failing to require that staff report events of physical abuse, verbal abuse, and harassment;

f.  negligent hiring and negligent retention of staff members who abused or neglected Jada;

g.  negligent training and supervision of staff members who abused or neglected Jada;

h.  failing to terminate staff members after known negligence, gross negligence, carelessness, wanton and willful misconduct, and reckless conduct;

i.  failing to monitor activities during employment of staff members who abused or neglected Jada;

j.  failing to employ competent and adequately trained nursing staff;

k.  negligent hiring and/or retention of nursing staff;

l.  failing to properly supervise nursing staff;

m.  failing to institute and/or enforce appropriate policies and procedures regarding appropriate interaction with the children residents;

n.  failing to increase supervision of Jada following prior reports of suspected abuse and neglect;

o.  wrongfully inducing Jada's Parent to rely on the training and supervision undertaken by Defendants when Defendant knew that the training and supervision of its employees was inadequate;

p.  ignoring the prior reports of physical abuse, verbal abuse, and/or harassment and refusing to take necessary action to assure the safety of persons in Jada's residence;

q.  failing to train the staff in how to interact, assist, or help students on the autism spectrum; and

r.  failing to make sure the staff were familiar with Jada's needs before

permitting the interactions with Jada.

146. As a direct and proximate result of Defendants' negligence as set forth above, Jada was abused and injured, causing Plaintiff Shannon P.-R. to suffer psychological and emotional trauma, separation from her daughter, loss of relationship with her daughter, and humiliation. She has incurred and will continue to incur significant psychological, emotional, and monetary damages stemming from the physical and emotional injuries she and Jada have suffered due to Defendants' negligence.

147. The Plaintiffs believe and therefore aver that the conduct or lack thereof on the part of Defendants was so reckless and careless that it was outrageous and/or wanton and was in such disregard of the risk of harm to the Plaintiffs' interest that Plaintiffs are entitled to punitive damages in addition to compensatory damages.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants, jointly, severally, individually, and/or jointly and severally for compensatory damages and punitive damages in excess of One Hundred and Fifty Thousand Dollars ($150,000), interest, costs and such other and further relief as this Court deems just and proper.

## Count IV: Agency
### (against all Defendants)

148. Plaintiffs incorporate by reference all preceding paragraphs.

149. At all times relevant hereto, upon information and belief, the Defendants were agents of each other in the provision of specialized services to autistic children.

150. At all times relevant hereto, the Defendants were agents of one another, and in the course of this agency relationship authorized one another to provide specialized services to

autistic children such as Plaintiff Jada.

151.    The Defendants are liable to the Plaintiffs under the theory of agency.

152.    The Defendants' conduct caused and contributed to cause the Plaintiffs' injuries and damages averred hereinabove, which averments are fully incorporated herein by reference.

**WHEREFORE**, Plaintiffs demand judgment in their favor and against Defendants individually and/or jointly and severally with all other named Defendants, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), together with punitive damages, compensation for delay, and such other relief as the Court finds warranted.

## VIII.   Relief Requested

153.    Plaintiffs incorporate by reference all preceding paragraphs.

154.    Plaintiffs respectfully request monetary damages and reasonable attorney's fees and costs under Section 504, the ADA, and Pennsylvania law, and punitive damages under Pennsylvania law.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court:

(1)    Assume jurisdiction over this action;

(2)    Order appropriate monetary, compensatory, and punitive damages;

(3)    Order appropriate declaratory and injunctive relief;

(4)    Order the Defendants to compensate Plaintiffs for their reasonable attorney's fees and related costs, including the costs of any expert witnesses; and

(5)    Grant such other relief as this Court deems proper.

## JURY DEMAND

Plaintiffs demand a jury of twelve persons on all claims herein stated.

Respectfully submitted,

Jennifer P. Grobe, Esquire
PA ID No. 323085

Jacqueline C. Lembeck, Esquire
PA ID No. 314535

Michael J. Connolly, Esquire
PA ID No. 82065

Dennis C. McAndrews, Esquire
PA ID No. 28012

McANDREWS, MEHALICK, CONNOLLY,
HULSE and RYAN, P.C.
30 Cassatt Avenue
Berwyn, Pennsylvania 19312
Tele: 610-648-9300
Attorneys for Plaintiffs